Danny Leon MATTHEWS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–95–00161–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 4, 1997.

Brian D. Coyne, Houston, for appellant.

Keli Pool Roper, Houston, for appellee.

Before AMIDEI, O'NEILL and DRAUGHN, JJ.

## OPINION

AMIDEI, Justice.

Danny Leon Matthews appeals his conviction by a jury for capital murder. The jury assessed his punishment at life imprisonment. In six points of error, appellant contends (1) the trial court erred in denying appellant the right to question four veniremembers struck for cause by the State (points of error one, two, three, and four); (2) the trial court erred in admitting appellant's involuntary confession (point of error five); and (3) the trial court erred in failing to instruct the jury on the accomplice witness rule (point of error six). We affirm.

On January 19, 1993, appellant and his girl friend, Elizabeth Johnson (a.k.a. Elizabeth McAnally), rented a room at the Sun Light Motel. The next day, appellant told Elizabeth they were almost out of money and he was going to rob the motel clerk. Appellant left Elizabeth in the room and went to the motel office and asked the clerk (Honk Sam Chow) for a Sprite. Appellant slid sixty cents under the window to Ms. Chow for the drink. Ms. Chow then opened the door to hand the drink to appellant and he pointed a gun at her and forced his way into the office. Appellant demanded money and Ms. Chow showed appellant the cash register. Appellant grabbed the cash, ordered Chow to get on the floor and then shot her in the back of the head. The medical examiner testified Ms. Chow died from a gunshot wound to the head and a .38 caliber bullet was recovered.

In points of error one, two, three, and four, appellant contends the trial court erred by denying appellant the opportunity to examine four veniremembers before granting the State's strikes for cause. Appellant argues he had an absolute right under article 35.17(2), Texas Code of Criminal Procedure, to examine each capital veniremember.

Article 35.17(2), Texas Code of Criminal Procedure, provides:

2. In a capital felony case in which the State seeks the death penalty, the court shall propound to the entire panel of prospective jurors questions concerning the principles, as applicable to the case on trial, of reasonable doubt, burden of proof, return of indictment by the grand jury, presumption of innocence, and opinion. Then, on demand of the State or defendant, either is entitled to examine each juror on voir dire individually and apart from the entire panel, and may further question the juror on the principles propounded by the court.

Article 35.16(b)(3), Texas Code of Criminal Procedure, provides:

(b) A challenge for cause may be made by the State for any of the following reasons:

3. That he has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment.

The court instructed the jury panel on the definition of "reasonable doubt" and burden of proof, as follows:

It [the court's charge to the jury] will say, "A reasonable doubt is a doubt based on

reason and common sense, after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs."

"Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs."

The court further instructed the jury that the State has the burden to prove its case beyond a reasonable doubt, not beyond all doubt. The trial court instructed the panel that a juror would be disqualified to sit as a juror in a capital case (1) if he could never vote for the death penalty, regardless of the facts of the case; (2) if he is irrevocably committed, before trial has even begun, to vote against the death penalty, regardless of the facts and circumstances that might emerge during the course of the case; and (3) if his or her reservations or attitude about capital punishment would prevent him from making an impartial decision as to the defendant's guilt.

Before commencing voir dire of the individual jurors, the prosecutor explained to the panel:

> My burden is not beyond all doubt. There may be those of you out there, though, who would have to be convinced beyond all doubt, because it's a death-penalty case, because the death penalty is a possible punishment in the case. You may say to yourself: Look, in any other case beyond a reasonable doubt is great. But before I could convict somebody where the potential penalty is death, I've got to be convinced beyond all doubt.

The prosecutor asked the panel by rows if "anybody have to be convinced beyond all doubt." Juror Pico raised his hand and the prosecutor asked juror Pico: "Would you, sir, have to be convinced beyond all doubt before you could find a person guilty of the offense of capital murder, where the sentence is potentially death." Juror Pico answered with an unequivocal "yes." The prosecutor moved to strike juror Pico for cause and the trial court granted the prosecutor's motion.

Appellant asked the trial court, "Your Honor, may we have an opportunity to question these jurors?" The trial court denied appellant's request to cross-examine Juror Pico.

Thereafter, the prosecutor asked jurors Kotter and McBride the same question and they responded with unequivocal affirmations that they would have to be convinced *beyond all doubt* of the guilt of the accused before they could convict him where the potential penalty is death. Jurors Kotter and McBride were struck for cause by the trial court without allowing appellant the opportunity to question the jurors. Juror Cashion was stuck for cause because she would always find a capital murder defendant to be a future danger to society after having found him guilty of murder committed in the course of a robbery.

Appellant contends the trial court erred in denying him the opportunity to examine the four jurors excused for cause and cites *Garrett v. State*, 851 S.W.2d 853 (Tex.Crim.App. 1993) and *Grijalva v. State*, 614 S.W.2d 420 (Tex.Crim.App.1981) as authority. Appellant construes *Garrett* and *Grijalva* as giving appellant an absolute right to question the jurors and to grant the State's causal strike denying appellant the opportunity to question the juror is reversible notwithstanding that the State may have had peremptory challenges remaining at the conclusion of voir dire. *Garrett*, 851 S.W.2d at 861. We disagree.

■ *Garrett* held that it is reversible error for the trial court to grant a challenge for cause based on a veniremember's statement that he will require something more than the facts of the case to answer the special issue asking the jury whether defendant would commit criminal acts of violence that would constitute a continuing threat to society. *Id.* at 860. A venireman who indicates he would require more evidence than the legal minimum to answer the special issue affirmatively is not subject to challenge for cause on the grounds he has a bias or prejudice against the law upon which the State was entitled to rely. *Id.* This holding was reaffirmed in *Howard v. State*, 941 S.W.2d 102, 127–29 (Tex.Crim.App.1996) (opinion on reh'g). In

*Howard*, venireman Durling asserted that she could never answer the future dangerousness issue in the affirmative without evidence the accused had committed a prior murder. *Id.* at 127. The court of criminal appeals held that a venireman who requires evidence of a prior murder "has not demonstrated an inability to abide by the law if his requirement is predicated upon his personal threshold of reasonable doubt." The *Howard* court concluded the State must show that the venireman's insistence on evidence of a prior murder will prevent him from honestly answering the special issue regardless of whether he was otherwise convinced beyond a reasonable doubt of future dangerousness, before it can be said the State met its burden to demonstrate the venireman cannot follow the law. *Id.* at 129. The *Howard* court set forth the rule applicable to this case concerning the trial court's denying appellant the opportunity to examine a juror before the juror is excused for cause, to wit:

> Where it is clear, after inquiry by the trial court, that venirepersons are conclusively biased against a phase of the law upon which the State is entitled to rely at guilt/innocence or at punishment, and where such views prevent or substantially impair the performance of their duties as jurors, it is not error to deny a defendant an opportunity to question those venirepersons before granting the State's challenge for cause.

*Id.* at 113.

■ In *Drinkard v. State*, 776 S.W.2d 181, 187–88 (Tex.Crim.App.1989), a venireman was struck for cause for bias and prejudice against the law in that "he clearly indicated that he would hold the State to a standard higher than beyond a reasonable doubt." The court of criminal appeals held " [t]hough it was error to refuse defense counsel permission to question the veniremember, the error was harmless, as Mr. Nix's views on capital punishment were such that they would prevent or substantially impair his performance as a juror." *Id.* at 188. In *Howard*, the court cited *Drinkard* as one of the cases where the court of criminal appeals had found error in denying a defendant an opportunity to examine veniremembers before excusal but then found the error to be harmless "if, at the time the trial court granted the State's challenge for cause, the veniremember, through questioning by the prosecutor or the trial court, made it absolutely clear that his views on the death penalty would have prevented or substantially impaired the performance of his duties as a juror in accordance with his instructions and his oath." *Howard*, 941 S.W.2d at 113. In this case, the trial court gave the jury the correct definition of "reasonable doubt" and explained the burden was on the State to prove its case beyond a reasonable doubt and not beyond all doubt. Jurors Pico, Kotter and McBride affirmatively and unequivocally stated they would have to be convinced beyond all doubt of the defendant's guilt where the penalty is potentially death. We find these jurors would hold the State to a higher burden of proof and their personal views in a trial involving the death penalty were such that they were conclusively biased against a phase of the law upon which the State was entitled to rely at the guilt/innocence stage, and these views would substantially impair the performance of their duties as jurors. *Howard*, 941 S.W.2d at 113; *Drinkard*, 776 S.W.2d at 188. Accordingly, the trial court did not abuse its discretion in granting the State's challenges for cause and excusing the jurors before appellant questioned them. *Id.*

■ Likewise, we find that juror Cashion was biased against a phase of the law relied on by the State because she unequivocally stated she would *always* find a capital murder defendant to be a future danger, because a defendant found guilty of murder during a robbery would probably be a continuing threat to society. Tex.Code Crim. Proc. Ann. art. 37.071, § 2(b)(1) (Vernon 1991). Cashion demonstrated herself unable to follow the law objectively by "manifesting an inability, once the issue of guilt has been resolved against the accused, to reconsider guilt evidence in the particular context of special issues." *Cooks v. State*, 844 S.W.2d 697, 712 (Tex.Crim.App.1992), *cert. denied*, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993). "Where a veniremember would automatically answer one or more of the special issues in the affirmative, he or she is chal-

lengeable for cause." *Banda v. State*, 890 S.W.2d 42, 57 (Tex.Crim.App.1994), *cert. denied*, 515 U.S. 1105, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995). Accordingly, the trial court did not abuse its discretion in granting the State's challenge for cause without questioning by appellant because it found Cashion was conclusively biased against a phase of the law upon which the State was entitled to rely at punishment, and such views prevented or substantially impaired the performance of her duty as a juror. *Howard*, 941 S.W.2d at 113. We overrule appellant's points of error one, two, three, and four.

In point of error five, appellant contends his confession was the result of an improper inducement and the trial court erred in failing to suppress the statement. Appellant contends the only reason he confessed is because the officers promised to release and not charge his girlfriend with the crime if he confessed.

Before a promise will render a confession inadmissible, it must be shown that the promise induced the confession. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex.Crim.App. 1993), *cert. denied*, 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993). In order to induce the confession, the promise must be (1) positive, (2) made or sanctioned by someone in authority, and (3) of such an influential nature that a defendant would speak untruthfully in response thereto. *Id.*

The trial court conducted a hearing out of the presence of the jury to determine the voluntariness of appellant's confession. At the hearing, the State was not required to rebut appellant's assertions, but only controvert them. *Muniz*, 851 S.W.2d at 252. When the case presents a controverted issue to the trial court, the trial court acts exclusively as the factfinder, assessing the credibility of the witnesses and the weight to be accorded their testimony. *Id.* If the trial court's resolution of a controverted issue is supported by the record, a reviewing court should not disturb the trial court's decision. *Id.*

Appellant's written confession was taken by Detective William Taber, with Detective Max Cox present at the time. Taber and Cox testified they did not tell appellant they would release Elizabeth Johnson (a.k.a. Elizabeth McAnally) and not charge her with the crime if he confessed. Taber indicated appellant had a cocky attitude and acted as if he were proud of what he had done. Sergeant John Denholm acted as a witness to the written statement and testified appellant denied that he had been threatened or coerced before the confession. The only evidence of this alleged collateral inducement by the police officers was appellant's testimony at the hearing that "*they* said if I took [sic] the statement I would be taking the blame for it; *they* wouldn't have anything to be charging her with." Appellant further testified he was in love with Elizabeth and would not have made the statement if *they* hadn't promised to release her and not charge her. Appellant never identified the officers that told him *they* would release Elizabeth in return for his confession, nor did appellant state when during the arrest procedure this promise was made. The last sentence of appellant's written confession, which he initialed "DM," recites: "I have not been threatened or promised anything by anyone for the making of this statement."

In *Barton v. State*, 605 S.W.2d 605, 607 (Tex.Crim.App.1980), the court of criminal appeals addressed the sufficiency of evidence to controvert the testimony of appellant's assertions. In *Barton*, the appellant alleged one of the officers intimidated appellant the night before he signed his confession by removing his eyeglasses and putting his foot on appellant's knee "in an intimidating manner" while the two were alone in the interrogation room. *Id.* at 606. The court of criminal appeals found that the "testimony of someone present at the time of the alleged incident would have been sufficient to controvert the appellant's contention." *Id.* at 607. In this case, Detective Max Cox was present when Detective Taber took appellant's statement and he testified there were no promises made by any officers to appellant to release Elizabeth in exchange for his confession. This testimony is sufficient to controvert the appellant's contention. *Id.* Therefore, the trial court, as the exclusive judge of the witness' credibility, acted well within its au-

thority in disbelieving appellant's assertions. *Muniz,* 851 S.W.2d at 254. Furthermore, we fail to see how the alleged promise to release Elizabeth could influence a person to *untruthfully* confess to this capital murder case. Appellant has failed to demonstrate that a party in authority positively and unequivocally promised to release Elizabeth in return for appellant's confession. Appellant has failed to demonstrate the alleged promise was "of such an influential nature that a defendant would speak untruthfully in response thereto." *Id.* The trial court did not abuse its discretion in admitting the confession in evidence. We overrule appellant's fifth point of error.

In point of error six, appellant contends the trial court erred in failing to instruct the jury that Elizabeth was an accomplice witness as a matter of law and that her testimony required corroboration. Article 38.14, Texas Code of Criminal Procedure, requires the testimony of an accomplice to be corroborated to uphold a conviction.

▇▇▇▇ The record shows that Elizabeth Johnson was fourteen years of age on January 20, 1993, the date of the offense. She testified on January 25, 1995, that she was sixteen years of age. At the time she testified, she was two years and five days older than she was on the date of the offense, making her fourteen years of age on the date of the crime. The record does not contain any records of criminal charges against Elizabeth other than her testimony that she was charged as a juvenile and released. There is nothing in the record to indicate what charges, if any, were brought against her either as a juvenile or an adult. She further testified she was fourteen years of age when she met appellant a short time before the offense. The record indicates Elizabeth gave a statement to the police but the statement was not made a part of the record. Section 8.07, Texas Code of Criminal Procedure, on the date of the offense, provided "[a] person may not be prosecuted for or convicted of any offense that he committed when younger than 15 years...." We find the evidence shows Elizabeth was fourteen years of age at the time of the offense on January 20, 1993, and she was therefore incapable of possess-

ing criminal culpability. *Villarreal v. State,* 708 S.W.2d 845, 848 (Tex.Crim.App.1986). Therefore, since Elizabeth could not have been prosecuted for the offense of murder, then it necessarily follows that she could not have been an accomplice witness as a matter of fact or a matter of law. *Id.* This being the case, article 38.14, Texas Code of Criminal Procedure, did not apply to Elizabeth. *Id.* at 849. *See also Arrizola v. State,* 742 S.W.2d 469, 471 (Tex.App.—Amarillo 1987, no writ). "When it is clear from the evidence that the witness was *not* an accomplice, no charge need be given to the jury either that a witness is an accomplice as a matter of law or that the jury is to decide whether the witness is an accomplice." *Harris v. State,* 645 S.W.2d 447, 456 (Tex.Crim.App.1983) (emphasis in original). We overrule appellant's point of error six and affirm the judgment of the trial court.