Foster O'CANAS, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 05–02–01638–CR.

Court of Appeals of Texas,
Dallas.

Nov. 17, 2003.

Discretionary Review Refused
July 28, 2004.

Nathan Kight, Irving, for appellant.

William T. (Bill) Hill, Jr., District Attorney, Appellate Section, Johnna H. Grau, Assistant District Attorney, Dallas, for state.

Before Justices JAMES, FITZGERALD, and LANG–MIERS.

## OPINION

Opinion By Justice JAMES.

Foster O'Canas, Jr. appeals his conviction for aggravated sexual assault of a child under the age of fourteen. After finding appellant guilty, the jury assessed appellant's punishment at nine years' imprisonment. Appellant brings three points of error alleging: (1) the evidence is factually insufficient to support his conviction; (2) the trial court erred in admitting evidence of extraneous offenses; and (3) the trial court erred by submitting a partial *Geesa* instruction. We affirm the trial court's judgment.

## FACTUAL BACKGROUND

A.K. is Carrie Cabler's daughter. In 1997, Cabler was divorced from A.K.'s father and had custody of A.K. Cabler met appellant in 1997, and she and A.K. moved in with him soon after. Cabler and appellant married in 1998. A.K. had her own bedroom, but because she was afraid to sleep alone, she would sneak into Cabler's and appellant's bedroom and sleep on the floor. Eventually, appellant put a mattress on the floor for her in his and Cabler's bedroom.

Appellant was controlling and violent. He frequently beat Cabler, sometimes severely, and often in A.K.'s presence. On one occasion, when appellant was severely beating Cabler, A.K. stepped between them and appellant punched her. Besides appellant's violent nature, he would also get drunk and use drugs around A.K. Margaret Clark, who is Cabler's mother and A.K.'s grandmother, did not like appellant and was concerned about Cabler and A.K.'s safety and welfare because of appellant's abusive nature, drinking, and drug use. Cabler often had a black eye, "busted" lip, and other bruises, and Clark tried to convince Cabler to leave appellant. At Clark's urging, Cabler left appellant several times, but she returned to him each time after only a few days, taking A.K. with her. Clark would chastise appellant for his treatment of Cabler, but appellant would beat Cabler all the more after Clark did so. Appellant threatened to kill Clark, burn down her house, and put a bomb in her car.

Appellant did not often work, and he did not allow Cabler to work. They survived on Cabler's housing benefits and child-support payments and gifts of provisions from Clark. Appellant obtained some money burglarizing newspaper vending machines, and he would use A.K. as a lookout while burglarizing the machines.

Maria Longoria, appellant's aunt, approached Clark about trying to get A.K. out of appellant's and Cabler's household. Longoria testified Clark told her she planned to plant drugs on appellant and have him arrested; Clark testified Longoria devised the plan of planting drugs on appellant.

A.K. testified that in August 2000, when she was about ten years old, appellant sexually abused her three times, each incident occurring about a week apart and while Cabler was taking a shower. The first time, appellant put his hand on A.K.'s clothes at her genital area and rubbed her with his hand in a circular motion. The second time, appellant removed A.K.'s clothing and touched and rubbed her genital area with his hand. The third time, appellant removed A.K.'s and his own clothing, got on top of her, and rubbed her genitals with his penis until he ejaculated on her. Appellant told her not to tell anyone or they would get into trouble. During this period, A.K. developed a rash on her genitals. Clark asked A.K. if anyone, including appellant, had been messing with her, and A.K. said no.

At some point after the last sexual assault, A.K. told Cabler appellant had been "messing" with her, and Cabler "went ballistic." Cabler sent A.K. to telephone Clark to pick them up because she was leaving appellant. Clark came by, and with the help of appellant's aunt and cousin, they tried to finish packing while appellant was away. However, before they finished, appellant returned and tried to stop them from leaving. A.K. told Clark appellant was "messing" with her, and Clark "went ballistic." Clark told Cabler she was taking A.K. with her even if Cabler did not come. The police arrived to quell the disturbance created by these events, and when appellant agreed to let Cabler and A.K. leave, the police left without arresting appellant.

Cabler moved back with appellant the next week, leaving A.K. with Clark. Cabler told appellant's sister, his cousin, and appellant's sister's boyfriend she did not believe appellant sexually abused A.K. because appellant was not the kind of person who could have committed such an offense and because he would not have had an opportunity to do so as Cabler was always present with A.K. and appellant. Cabler told them she thought Clark had fabricated the sexual abuse allegations because she fervently hated appellant.

By the time of trial, Cabler no longer lived with appellant, but she was still married to him. During the trial, Cabler was staying with a female friend, and she was "with" a man she started seeing while she lived with appellant. A.K. lived with her biological father, his wife, and their children. Clark testified she could see A.K. whenever she wanted to, and they frequently, or according to A.K., "constantly," discussed the sexual abuse incidences.

## FACTUAL SUFFICIENCY OF THE EVIDENCE

■ In his first point of error, appellant contends the evidence is factually insufficient to support his conviction. In analyzing whether the evidence was factually sufficient to support the conviction, we must determine "whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000). We must set the verdict aside only if it is so factually insufficient or against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Id.; Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996). In conducting this analysis, the appellate court must defer to the trier of fact's determination concerning the weight given contradictory evidence. *Johnson*, 23 S.W.3d at 8; *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997); *Santellan v. State*, 939 S.W.2d 155, 164–65 (Tex.Crim.App.1997). The reviewing court

is not free to reweigh the evidence and set aside a guilty verdict merely because the reviewing judges feel that a different result is more reasonable. *Clewis,* 922 S.W.2d at 135. Rather, the purpose of this analysis is to allow an appellate court, in the exercise of its fact jurisdiction, to prevent a manifestly unjust result. *Cain,* 958 S.W.2d at 407; *Clewis,* 922 S.W.2d at 135.

Appellant argues the evidence is factually insufficient because "the record reveals that Complainant's allegations were, in fact the result of Cabler's desire to be free of him to pursue an extramarital relationship, Clark's hatred of Appellant, and the resulting manipulation of Complainant." A.K., Clark, and Cabler denied fabricating the sexual abuse allegations. The jury was in the best position to determine their credibility. After reviewing all the evidence under the factual sufficiency standard of review, we conclude the proof of guilt is not so obviously weak as to undermine confidence in the jury's determination, nor is the proof of appellant's guilt greatly outweighed by contrary proof. We conclude the jury's guilty verdict is neither clearly wrong nor manifestly unjust. We hold the evidence is factually sufficient to support appellant's conviction. We overrule appellant's first point of error.

### EXTRANEOUS OFFENSE

■ In his second point of error, appellant contends the trial court erred in overruling appellant's objection to evidence he used A.K. as a lookout while he burglarized newspaper vending machines. Appellant objected to the evidence as "improper impeachment of the defendant, going into extraneous offenses." The prosecutor responded that evidence went to appellant's and A.K.'s relationship, and the trial court overruled appellant's objection.

Appellant argues the evidence is not admissible under rule of evidence 404(b).

However, in cases of sexual assault of minors,

> Notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence [sic], evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
>
> (1) the state of mind of the defendant and the child; and
>
> (2) the previous and subsequent relationship between the defendant and the child.

TEX.CODE CRIM. PROC. ANN. art. 38.37, § 2 (Vernon Supp.2004). The evidence of appellant having A.K. assist him in burglarizing the vending machines shows appellant exposed A.K. to his corrupt lifestyle and that he viewed this child as a mere tool to aid him in his wrongful purposes, whether monetary or sexual. We conclude this evidence constitutes relevant evidence of appellant's state of mind and of his and A.K.'s relationship under article 38.37, section 2.

■ However, even if the trial court erred in admitting the evidence, we must disregard the error unless it affected appellant's substantial rights. TEX.R.APP. P. 44.2(b). "[S]ubstantial rights" are affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). In determining whether the error was harmful under rule 44.2(b), we examine the entire record. *See Fowler v. State,* 958 S.W.2d 853, 865 (Tex.App.-Waco 1997), *aff'd,* 991 S.W.2d 258 (Tex.Crim.App.1999).

Appellant asserts the prejudice from this evidence came from its tendency to "cast[ ] aspersions upon Appellant's character and to depict him as one who schooled the youth in crime. Thus it was an attempt not to try this case on its

merits, but to try Appellant for being a criminal in general." This evidence was only one of a multitude of other "aspersions upon Appellant's character." Appellant's drunkenness, drug use, and chronic beating of Cabler (and once of A.K.), all in A.K.'s presence, were all aspersions upon appellant's character at least as prejudicial as the evidence he used A.K. to assist him in burglarizing vending machines. The testimony concerning appellant stealing from vending machines was brief, and it received only scant mention in the jury argument at the guilt phase of the trial.

In light of the large amount of other prejudicial evidence of appellant's bad character, and the brevity of this evidence of appellant's bad character, we conclude the evidence of appellant's using A.K. to assist him in burglarizing vending machines did not affect his substantial rights. Accordingly, we must disregard the error, if any. We overrule appellant's second point of error.

## JURY CHARGE

■ In his third point of error, appellant contends the trial court erred in submitting a partial *Geesa* instruction. In *Geesa v. State*, the court of criminal appeals held the term "reasonable doubt" should be defined in the jury charge, and the court directed the trial courts to include a particular six-paragraph instruction in the jury charge:

[1] All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

[2] The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

[3] It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all "reasonable doubt" concerning the defendant's guilt.

[4] A "reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs.

[5] Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

[6] In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "Not guilty".

*Geesa v. State,* 820 S.W.2d 154, 162 (Tex. Crim.App.1991) (paragraph numbering added). Almost nine years later, the court of criminal appeals overruled this holding of *Geesa* because defining reasonable doubt in paragraphs [4] and [5] of the

*Geesa* instruction in terms of "hesitation" was "redundant," "useless," and "ambiguous." *Paulson v. State*, 28 S.W.3d 570, 572 (Tex.Crim.App.2000). The court decided "[i]f a conscientious juror reads the *Geesa* charge literally, he or she will never convict anyone" because the decision to brand anyone a criminal and take away his life, liberty, or property would cause a juror "with any human feelings or sensitivity at all" to hesitate. *Id.* The court of criminal appeals found "the better practice is to give no definition of reasonable doubt." However, the court stated, "if both the State and the defense were to agree to give the *Geesa* instruction to the jury, it would not constitute reversible error for the trial court to acquiesce to their agreement."[1]

In this case, the trial court did not submit paragraphs [4] and [5] of the *Geesa* instruction but did submit paragraphs [1], [2], [3], and [6] of the *Geesa* instruction verbatim. Appellant did not object to the charge. On appeal, appellant contends the trial court erred in submitting paragraph [3] of the *Geesa* instruction: "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." Appellant does not complain of the trial court's inclusion of paragraphs [1], [2], and [6] of the *Geesa* instruction in the jury charge.

Since *Paulson*, this particular situation—the submission of paragraph [3] from the *Geesa* instruction—has arisen several times before the courts of appeals. Eight courts have addressed the issue: six found no error in submitting the instruction, and two held the submission of the instruction was error, but harmless.

The first court to address the issue was the Waco Court of Appeals in *Phillips v. State*, 72 S.W.3d 719 (Tex.App.-Waco 2002, no pet.). The Waco Court interpreted *Paulson* as prohibiting the use of any part of the *Geesa* instruction unless expressly agreed to by all the parties:

> Here the trial court extracted two lines from the reasonable-doubt instruction in *Geesa* and gave them to the jury. Because the Court of Criminal Appeals was clear on the point—give it all if the parties agree or give none of it—we hold it was error to give part of the *Geesa* instruction in the absence of an agreement.

*Id.* at 721. The Waco court found, however, the error did not cause appellant egregious harm. *Id.*

The Austin court agreed with the Waco court that the instruction was erroneous; however, it disagreed with the Waco court's all-or-none analysis: if no part of the *Geesa* instruction may be given, including paragraphs [1], [2], and [6], the jury will be left without a reasonable doubt instruction. *Rodriguez v. State*, 96 S.W.3d 398, 405 (Tex.App.-Austin 2002, pet. ref'd). The Austin court observed that the instruction in paragraph [3] was not expressly criticized and rejected in *Paulson*. *Id.* "It does, however, state what reasonable doubt is not, and in this sense, is definitional." *Id.* The Austin court concluded that because *Paulson* proclaims the "better practice" is to give no definition of reasonable doubt, the trial court erred in submitting paragraph [3] over the defendant's objection. *Id.* However, the Austin court held the error was harmless. *Id.* at 406.

The Houston (First District) Court of Appeals was the next appellate court to

---

1. Because we conclude paragraph [3] does not define reasonable doubt, we do not consider whether the parties' failure to object to the inclusion of paragraph [3] constitutes a tacit agreement by the parties to the defining of reasonable doubt and acquiescence to that agreement by the trial court.

consider the propriety of the paragraph [3] instruction. In *Carriere v. State*, 84 S.W.3d 753 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd), the court concluded it was not error to submit the paragraph [3] instruction because: (1) "it did not define reasonable doubt—it merely instructed the jury that appellant's guilt must be proved beyond a reasonable doubt, not beyond all possible doubt," *id.* at 759; and (2) "[i]f including any instruction or definition regarding reasonable doubt would constitute error, the *Paulson* court was in a position to say so and, instead, it remained silent to that effect." *Id.* at 760. Four other courts of appeals, Fort Worth, San Antonio, Texarkana, and El Paso, have agreed with *Carriere*'s determination that paragraph [3] does not define reasonable doubt. *See Ochoa v. State*, 119 S.W.3d 825, 829 (Tex.App.-San Antonio 2003, no pet.); *Torres v. State*, 116 S.W.3d 208, 212 (Tex.App.-El Paso 2003, no pet.); *Hanks v. State*, 104 S.W.3d 695, 701–02 (Tex.App.-El Paso 2003, pet. granted); *Fluellen v. State*, 104 S.W.3d 152, 163–64 (Tex.App.-Texarkana 2003, no pet.); *Minor v. State*, 91 S.W.3d 824, 828–29 (Tex.App.-Fort Worth 2002, pet. ref'd); *Vosberg v. State*, 80 S.W.3d 320, 324 (Tex.App.-Fort Worth 2002, pet. ref'd). The Houston (Fourteenth District) Court of Appeals did not address whether paragraph [3] defined reasonable doubt but agreed with *Carriere*'s second rationale: "*Paulson* did not hold that giving the instruction, in the absence of an agreement between the State and the defense, would constitute reversible error. Accordingly, it was not error for the trial to include the instruction." *Jackson v. State*, 105 S.W.3d 321, 325 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd). This Court has not yet published an opinion addressing this situation.

Like the other courts, we disagree with the Waco court's analysis in *Phillips*. Unlike the Waco court's assertion, *Paulson* did not prohibit the trial court from giving any of the six paragraphs constituting the *Geesa* instruction. *Paulson* prohibited (absent agreement to the contrary) defining reasonable doubt as set out in paragraphs [4] and [5] of the instruction, and it held "the better practice" is to give no definition of reasonable doubt. *Paulson*, 28 S.W.3d at 573. *Paulson* did not, however, limit the submission of paragraphs [1], [2], [3], or [6]. *See id.* at 572–73. Like the Texarkana court, "we find nothing in *Paulson* to suggest that giving a correct statement of the law that happened to be contained within the *Geesa* instruction would necessarily be error." *Fluellen*, 104 S.W.3d at 164. Accordingly, we disagree with the Waco court's analysis in *Phillips*.

We also disagree with the Austin court's conclusion in *Rodriguez* that paragraph [3] is "definitional" of the term "beyond a reasonable doubt." In *Paulson*, the court of criminal appeals stated the *Geesa* instruction "attempts to define reasonable doubt three times," and the court quoted paragraphs [4] and [5] as constituting those three attempted definitions. *Paulson*, 28 S.W.3d at 572 (paragraph [4] contains two definitions, and paragraph [5] contains the third definition). The court never stated paragraph [3] defined "beyond a reasonable doubt" despite having the issue squarely before it. If paragraph [3] defined the term "beyond a reasonable doubt," the court of criminal appeals would have so stated in *Paulson*.

■ What constitutes proof "beyond a reasonable doubt" is not subject to definition by the trial court because it is up to the jurors to determine whether their doubts, if any, about the defendant's guilt are reasonable.[2] As the Austin court ob-

---

2. The Houston (14th District) Court of Appeals observed that the "beyond a reasonable doubt" standard is itself a definition of the

served in *Rodriguez,* prospective jurors are often instructed during voir dire that the State's burden of proof beyond a reasonable doubt does not require proof beyond all doubt. *Rodriguez,* 96 S.W.3d at 405. Prospective jurors who state they cannot convict unless the defendant's guilt is proven beyond all doubt—and not beyond a reasonable doubt—are held to have a bias against the law and are stricken for cause. *See, e.g., Coleman v. State,* 881 S.W.2d 344, 360 (Tex.Crim.App.1994); *Jacobs v. State,* 787 S.W.2d 397, 404 (Tex. Crim.App.1990); *Matthews v. State,* 965 S.W.2d 541, 543–44 (Tex.App.-Houston [14th Dist.] 1997), *vacated on other grounds,* 971 S.W.2d 72, 72 (Tex.Crim.App. 1998) (per curiam). Thus, paragraph [3] simply states the legally correct proposition that the prosecution's burden is to establish proof beyond a *reasonable* doubt and not *all possible* doubt. Unlike paragraphs [4] and [5], paragraph [3] does not attempt to aid jurors in determining whether their doubts are reasonable. We agree with the Houston (First District) Court of Appeals's decision in *Carriere* that paragraph [3] of the *Geesa* instruction does not define reasonable doubt.

We hold the trial court did not err by including paragraph [3] from the *Geesa* instruction in the jury charge. We overrule appellant's third point of error.

We affirm the trial court's judgment.

degree of certitude required for a criminal conviction. *Paulson v. State,* 991 S.W.2d 907, 911–912 (Tex.App.-Houston [14th Dist.] 1999), *rev'd,* 28 S.W.3d 570 (Tex.Crim.App. 2000). The Houston court's opinion also contains an informative overview of the history of the criminal conviction standard. *See id.* at 909–11.