**AFFIRMED; Opinion Filed July 3, 2019.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00949-CR

**ALEX LEON DICKERSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. F16-75623-X**

## MEMORANDUM OPINION

Before Justices Myers, Molberg, and Carlyle
Opinion by Justice Carlyle

A jury convicted appellant Alex Leon Dickerson of murder and he was sentenced by the trial court to forty years' imprisonment. In three issues on appeal, appellant contends (1) the evidence is insufficient to identify him as the murderer; (2) the trial court erred by defining reasonable doubt in the jury charge; and (3) the trial court lacked jurisdiction because this case was not properly transferred to its docket. We affirm the trial court's judgment in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

### I. Background

Crystal Dickerson testified at trial that appellant is her adoptive brother. At the time of these events, Crystal was living in a Dallas apartment with her boyfriend, Patrick; her older sister,

Shunta; and Shunta's boyfriend, Saul. All four of them were at home and three others were visiting: Crystal's brother D'Autry; appellant; and appellant's former girlfriend, Latoy.

At about 2 a.m., D'Autry and Latoy were lying on a couch in the living room watching television. Crystal and Patrick were in their bedroom. Patrick was lying across the end of the bed scrolling through television channels. Crystal invited Shunta, Saul, and appellant into the bedroom to "smoke a blunt." As appellant walked into the bedroom, Crystal was standing near the bed about a foot away from Patrick's head, "rolling a blunt" and talking with Shunta and Saul. Crystal heard a gunshot, "looked up," and saw appellant holding a gun with a scope. Then, she saw appellant fire two additional shots at Patrick. She stated that at that point, Patrick was bleeding and "everybody is screaming." Appellant was "walking in circles" and seemed "agitated." Appellant pointed the gun at Crystal and demanded her car keys, which she gave him. He then left the bedroom. Patrick died a short time later from his gunshot wounds.

Immediately after appellant left the bedroom, Crystal called 911 from her cellphone and told the operator her boyfriend had been shot and she didn't know who shot him. Also, a few minutes later, she made a second 911 call "because they were taking too long" and repeated that same information. When police arrived, they asked Crystal the identity of the shooter and she told them, "I don't know." She told police a "short and bright male" "broke into the house and did this." Crystal testified the term "bright" refers to a "light-skinned black person," which appellant is not. She testified she lied because she "was in a state of panic," had "never told on my brother before, not even to my mom," and "was between a rock and a hard place." Later that night, the responding officers took her to a police station to talk with a detective. When interviewed by the detective, she "went ahead and told him exactly what happened" and that appellant was the shooter. On cross-examination, Crystal testified she lied "at lot of times" that night about not knowing the shooter's identity, but that was the only thing she lied about.

–2–

Latoy testified she remained in the living room watching television when the others went into Crystal's room to smoke. D'Autry was asleep on the couch next to her. She saw appellant walk down the hallway toward the bedroom, but she was unable to see into the bedroom from where she was sitting. A few minutes later, she heard four gunshots, then "pitch quiet." Latoy testified she had seen appellant "messing with" a gun with a "beam" on it a day or so earlier. When she heard the gunshots, she "really thought he was killing everybody." She woke D'Autry, then heard Crystal yelling. She ran to the bedroom and saw appellant pointing a gun at Crystal and demanding her car keys. After Crystal gave appellant the keys, he headed toward the front door. As he left the apartment, he told D'Autry to come with him. Appellant and D'Autry drove away in Crystal's car.

D'Autry testified appellant had first met Patrick the day before the shooting. Additionally, (1) several other witnesses testified regarding the shooting investigation; and (2) recordings of Crystal's 911 calls and videos of the crime scene investigation were played for the jury.

The jury charge stated in part, "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt." Appellant asserted no objection to the jury charge.

## II. Evidentiary sufficiency

We review the sufficiency of the evidence to support a conviction by viewing all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard gives full play to the factfinder's responsibility to resolve testimonial conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.*; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). The factfinder is the sole judge of the evidence's weight and credibility. *See* TEX. CODE CRIM. PROC.

art. 38.04; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for the factfinder's. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the evidence's cumulative force viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448. We must presume the factfinder resolved any conflicting inferences in the verdict's favor and defer to that resolution. *Id.* at 448–49. A person commits murder by "intentionally or knowingly caus[ing] the death of an individual." TEX. PENAL CODE § 19.02(b)(1).

In his first issue, appellant contends the evidence is insufficient to sustain his murder conviction because "[t]here is a mere modicum of evidence on the element of identity." Appellant asserts "[b]ecause Crystal's only trustworthy statements about the identity of Patrick's killer were the present sense impressions and excited utterances she made to the 911 operators and because of the lack of motive for Appellant to have committed the crime the evidence falls below the standard to affirm this conviction under *Jackson*."

Crystal testified she (1) saw appellant shoot Patrick and (2) initially lied about not knowing the shooter's identity because she was "in a state of panic" and had "never told on my brother before." The jury was the sole judge of the evidence's weight and credibility and thus was free to believe Crystal's testimony that she lied to the 911 operator and responding police officers. *See Dobbs*, 434 S.W.3d at 170. We may not re-evaluate the weight and credibility of the evidence and substitute our judgment for the factfinder's. *See Montgomery*, 369 S.W.3d at 192. Applying the appropriate standard, we conclude the evidence is sufficient to support appellant's murder conviction. *See Murray*, 457 S.W.3d at 448–49.

### III. Reasonable doubt definition in jury charge

When reviewing alleged jury charge error, the court must first determine whether error exists in the charge. *See Olivas v. State*, 202 S.W.3d 137, 143–44 (Tex. Crim. App. 2006); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). If charge error exists, then the court must apply the appropriate harm analysis. *See Olivas*, 202 S.W.3d at 143–44.

In his second issue, appellant contends the trial court erred by instructing the jury, "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt." Appellant argues this instruction violated the established principle that "the better practice is to give no definition of reasonable doubt at all to the jury," *see Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000), and should result in "automatic reversal." Appellant acknowledges this Court has previously concluded the complained-of instruction is not a reasonable doubt definition, but asserts he "disagrees" with this Court's conclusion.

As we have stated in prior cases, the complained-of language in this charge does not define reasonable doubt. *O'Canas v. State*, 140 S.W.3d 695, 702 (Tex. App.—Dallas 2003, pet. ref'd). Rather, it instructs the jury that it is the State's burden to prove beyond a reasonable doubt the elements of the crime for which appellant was charged. *See id*. We conclude the complained-of instruction did not violate *Paulson* and did not constitute jury charge error. *Id*.; *see Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010) (concluding trial court did not abuse discretion by giving complained-of instruction); *see also Ochoa v. State*, 119 S.W.3d 825, 829 (Tex. App.—San Antonio 2003, no pet.); *Torres v. State*, 116 S.W.3d 208, 212 (Tex. App.—El Paso 2003, no pet.); *Fluellen v. State*, 104 S.W.3d 152, 163–64 (Tex. App.—Texarkana 2003, no pet.); *Minor v. State*, 91 S.W.3d 824, 828–29 (Tex. App.—Fort Worth 2002, pet. ref'd); *Carriere v. State*, 84 S.W.3d 753, 759–60 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

**IV. Jurisdictional challenge based on lack of proper transfer**

In his third issue, appellant contends the trial court lacked jurisdiction because (1) this case was "presented to Criminal District Court Number Two of Dallas County, Texas," but "later appeared on Criminal District [Court] Number Six where it remained through the entry of judgment," and (2) "there is nothing in the record showing that jurisdiction was ever transferred by Criminal District Court Number Two to Criminal District Court Number Six." Appellant argues that because lack of jurisdiction over a case renders a trial court's judgment "void," this defect may be raised for the first time on appeal. Appellant acknowledges "authority is against his position," but contends those cases "simply cite to their antecedents without any Constitutional or statutory authority for the proposition that a jurisdictional defect can be cured by procedural default."

When a defendant fails to file a plea to the jurisdiction, he waives any right to complain that a transfer order does not appear in the record. *Hopkins v. State*, No. 05-17-01344-CR, 2018 WL 5024023, at *1 (Tex. App.—Dallas Oct. 17, 2018, no pet.) (mem. op., not designated for publication) (citing *Lemasurier v. State*, 91 S.W.3d 897, 899 (Tex. App.—Fort Worth 2002, pet. ref'd); *Mills v. State*, 742 S.W.2d 831, 834–35 (Tex. App.—Dallas, 1987, no pet.)). Appellant did not file a plea to the jurisdiction in this case.

Moreover, even if appellant had preserved this complaint, this Court has considered and rejected appellant's argument regarding the need for a transfer order. *See Bourque v. State*, 156 S.W.3d 675, 678 (Tex. App.—Dallas 2005, pet. ref'd); *Paz v. State*, No. 05-14-01127-CR, 2015 WL 6386424, at *10 (Tex. App.—Dallas Oct. 22, 2015, no pet.) (mem. op., not designated for publication). The record shows the grand jury was impaneled in Criminal District Court Number Two and, following the return of the indictment, this case was filed in Criminal District Court Number Six. Nothing in the record indicates this case was originally filed in or appeared on the

trial docket of Criminal District Court Number Two. Therefore, no transfer order from Criminal District Court Number Two was required. *See Bourque*, 156 S.W.3d at 678; *Paz*, 2015 WL 6386424, at *10 ("No transfer order is required where one court empanels the grand jury that returns the indictment in the case, but the indictment is filed in another court."). We conclude Criminal District Court Number Six had jurisdiction to hear this case and render judgment. *See Bourque*, 156 S.W.3d at 678; *Paz*, 2015 WL 6386424, at *10 ("Jurisdiction over felony cases, such as this case, lies in the district court or criminal district court where the indictment is first filed.").

## V. Conclusion

We decide appellant's three issues against him and affirm the trial court's judgment.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

180949F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

ALEX LEON DICKERSON, Appellant

No. 05-18-00949-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 6, Dallas County, Texas
Trial Court Cause No. F16-75623-X.
Opinion delivered by Justice Carlyle.
Justices Myers and Molberg participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 3rd day of July, 2019.