**Affirmed and Opinion Filed November 4, 2022**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-21-01037-CR

### CARLOS BERNARD LANE, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F18-76576-Y**

## MEMORANDUM OPINION

Before Justices Myers, Pedersen, III, and Garcia
Opinion by Justice Pedersen, III

A jury found appellant Carlos Bernard Lane guilty of aggravated sexual assault of a child, and the trial court assessed his punishment at six years' confinement in the Institutional Division of the Texas Department of Criminal Justice plus a $1500 fine. In this Court, appellant challenges the sufficiency of the evidence to support the jury's verdict and the jurisdiction of the trial court to hear his case; he also complains of errors in the court's charge to the jury. We affirm.

**Background**

A.S. is the complaining witness in this case. Her mother ("Mother") testified at trial as A.S.'s outcry witness. Mother explained that appellant is her father and that he had been absent from her life for a number of years when she was young. Mother and appellant reconnected when both were living in Dallas; A.S. was seven or eight years old at that time. Appellant would often watch A.S. for Mother while Mother worked.

Mother testified that A.S. wanted to stay over at appellant's home one night in October 2018. That was the first time A.S. had spent the night unsupervised with her grandfather. After appellant dropped A.S. off the next day, she told Mother that "Papa touched me." A.S. then described a series of events involving appellant. He told her she smelled musty, and then he rubbed deodorant under her arms and on her breasts. He later told her to take a shower, and while she was in the shower, he asked her if she knew what her virginity was; while she was in the shower, he rubbed her stomach, her legs, and in between her legs. After the shower, appellant gave A.S. a big shirt and boxers to wear, and he washed her clothes. Although he knew A.S. was afraid of the dark, he turned off all the lights and television; she was afraid, so she went into appellant's room and initially sat in a chair there. After appellant insisted, A.S. got in his bed. He removed her underwear and his underwear, touched her on her stomach and her neck, kissed her, and licked her breasts and between her legs. Mother called the police, and she and A.S. went to Children's Hospital, where A.S.

underwent a physical examination. Then they went to the Dallas Children's Advocacy Center, where A.S. was forensically interviewed.

A.S. testified that she was nine years old at the time of the events at issue. She stated that she and Mother both wanted her to stay at appellant's that night. She liked her grandfather and had not had any problem with him. She described watching television in the living room when they arrived at his apartment and getting appellant a beer at his request. A.S. testified that she took a bath that evening, and while she was in the bathtub appellant came into the room and put his hand on her vagina. This scared her, and she told appellant, "My momma said don't touch me there." Afterwards, she went with appellant to his room because all the lights were off, and she was afraid of the dark. She played a piano there and watched cartoons on the television while lying on a chest at the foot of the bed. After some time appellant told her to get on the bed, and she did. Then appellant started to touch her on her arms and her stomach. He lifted up her shirt and took off the boxers she had put on after her bath. Then he touched her legs, "put his mouth in [her] private area," and was licking her inside her vagina. She testified it felt "[w]eird and nasty," and she was scared. She smelled alcohol on appellant's breath. Appellant tried to make A.S. put her hand on his penis; while appellant held her hand she touched his penis, and it was hard. She didn't say anything to appellant while this was happening because she was scared. He told her not to tell Mother what happened. He washed the clothes that she had worn to his apartment, and she wore them back home the next day.

–3–

On cross examination, A.S. admitted she had looked through appellant's drawers trying to find a cell phone; she said that appellant was "strict" and "mean in his way." The testimony on this subject is less than clear, but A.S. did not say that she was punished for her conduct.

The defense was permitted to ask A.S. about an incident that she described to the district attorney—for the first time—when preparing for trial: she told the prosecutor that, when she was seven, a cousin had put his penis on her basketball shorts and wanted her to touch it. During her initial forensic interview in 2018, A.S. was asked whether anything like what had happened with appellant had happened to her before; she said no. A.S. initially agreed with defense counsel that the act she described involving her cousin was "very similar to the allegations that [she was] making against Papa." But on redirect, she testified specifically that no one had ever licked her vagina before, and that had been her understanding of the question she was asked in 2018.

Suzanne Dakil, M.D., the medical director of the Referral and Evaluation of At-Risk Children Clinic at Children's Medical Center, testified as an expert on child abuse. She described the examination A.S. underwent at Children's Hospital, and she explained that the results were normal. Specifically, she testified that no DNA evidence was discovered during that exam.

Dallas Police Department Detective Cory Foreman also testified at trial. Foreman watched A.S.'s forensic interview, and he interviewed appellant after

—4—

appellant was arrested. In that interview, appellant repeatedly denied that he had done anything to A.S., but he told the detective he had consumed a fifteen-pack of beer and some tequila that night. Foreman testified that, based on his many years of experience, he believed A.S. and not appellant.

The jury found appellant guilty, and the trial court assessed his punishment at six years' confinement plus a $1500 fine. This appeal followed.

## Sufficiency of the Evidence

In his first issue, appellant argues that the evidence is insufficient to prove that appellant committed the offense of sexual assault of a child. Appellant's indictment charged that he did "intentionally and knowingly cause the sexual organ of A.S., a child, to contact and penetrate the mouth of defendant, and at the time of the offense, the child was younger than fourteen years of age." *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B). Appellant argues that the only evidence probative of that indicted offense is A.S.'s testimony, and he contends that this evidence is "so weak that it creates only a suspicion of wrongdoing."

We review appellant's challenge by examining the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury is the sole judge of the credibility and weight to attach to witness testimony. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Furthermore, the testimony of a child victim is sufficient by itself

to support a conviction for sexual assault of a child. TEX. CODE CRIM. PROC. ANN. art. 38.07(a).

A.S. testified that appellant penetrated her vagina with his tongue. Appellant's defense was that no offense had occurred. The jury heard him deny the offense in a recording of Detective Foreman's interrogation, and defense counsel argued in closing that the evidence—or lack thereof—supported his denial. Thus, the fundamental issue for the jury was credibility. A.S.'s testimony was consistent with her outcry to Mother immediately after the event. Foreman, who observed A.S.'s forensic interview the day of her outcry, testified that she did not look coached or appear to have made up her story; instead, she gave "sensory details and effects" as she described what had happened. Considering the evidence in the light most favorable to the verdict, we conclude that a rational juror could have believed A.S. and found beyond a reasonable doubt that appellant committed the offense. *See Turner v. State*, 626 S.W.3d 88, 96 (Tex. App.—Dallas 2021, no pet.).

We overrule appellant's first issue.

**Jury Charge Errors**

In his second and third issues, appellant contends that the trial court submitted erroneous definitions or instructions to the jury in its charge. Appellate resolution of a jury-charge issue involves two steps. First, we determine whether error exists. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If error does exist, we determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*,

175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). When—as in this case—the errors were not objected to, we will reverse only if the error created egregious harm such that the defendant was denied a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). "Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011).

*Limiting Mental States to Relevant Conduct Elements*

The indictment charged appellant with conduct that was performed "intentionally and knowingly." In his second issue, appellant complains that the trial court's charge incorrectly applied these mental states to all three possible conduct elements—the nature of the conduct, the result of the conduct, and the circumstances surrounding the conduct—in the definition section. Appellant argues that the charge's definitions of these mental states should have been limited to the nature of appellant's conduct, because aggravated sexual assault of a child is a nature-of-conduct offense. *See Gonzales v. State*, 304 S.W.3d 838, 849 (Tex. Crim. App. 2010). Appellant did not object to the definitions at trial, so the error, if any, can only support reversal if it caused appellant egregious harm. *See Almanza*, 686 S.W.2d at 171.

The language in a jury charge concerning the culpable mental state must be tailored to the conduct elements of the offense. *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015). The State argues that appellant has not explained how giving the full definitions in statutory form is error. But even if we assume that the trial court's giving the full statutory definitions of the relevant culpable states was error in this case, we must determine whether appellant was deprived of a fair and impartial trial by the failure to limit the conduct element. *See Almanza*, 686 S.W.2d at 171. To that end, we review the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Taylor*, 332 S.W.3d at 489.

For our purposes, the most important portion of the jury charge is the application paragraph, which explains to the jury in concrete terms how to apply the law to the facts of the case. *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex. Crim. App. 2013). "We look at the wording of the application paragraph to determine whether the jury was correctly instructed in accordance with the indictment and also what the jury likely relied upon in arriving at its verdict, which can help resolve a harm analysis." *Id.* (footnote omitted). In appellant's case, then, to assess harm resulting from the inclusion of improper conduct elements in the definitions of culpable mental states, we look first to determine whether the culpable mental states were limited by the application paragraph. *See Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995).

The application paragraph in this case stated:

> Now, bearing in mind the foregoing instructions and definitions, if you find from the evidence beyond a reasonable doubt that on or about the 27th day of October, 2018, in the county of Dallas and the state of Texas, the defendant, Carlos Lane, *intentionally or knowingly caused the sexual organ of A. S., a child, to contact and penetrate the mouth of the defendant*, and that at the time of the offense, A. S. was younger than 14 years of age, then you will find the defendant guilty of the offense of Aggravated Sexual Assault of a Child, as charged in the indictment, and you shall not consider whether the defendant is guilty of any lesser offenses that are included in the indictment.

(Emphasis added.) The application paragraph correctly limited the charged mental states to appellant's conduct, i.e., to having "intentionally or knowingly caused the sexual organ of A.S., a child, to contact and penetrate the mouth of [appellant]." Because the trial court's application of the facts to the law pointed the jury to the appropriate portion of the definitions, we perceive no harm resulting from its failure to limit the definitions of culpable mental states to the conduct element of the charged offense. *See id.* at 493.

That conclusion is supported by the remaining *Almanza* factors. A.S. testified to the conduct at issue here, i.e., penetration of her sexual organ; in Detective Foreman's interrogation, appellant repeatedly denied that conduct. And trial counsel's argument focused entirely on whether that conduct had ever occurred: he challenged the credibility of A.S.'s testimony, of Mother's testimony concerning A.S.'s outcry, and of the investigative system that allowed a "single statement" to

bring appellant to arrest and trial.[1] Indeed, our review of the record identified no issue involving appellant's mental state—only a credibility dispute as to whether the charged conduct occurred.

Under the circumstances of this case, we conclude appellant was not harmed egregiously by the trial court's failure to limit the definition of mental states to the conduct element at issue in this case. We overrule appellant's second issue.

*Definition of Reasonable Doubt*

In his third issue, appellant argues that the trial court "committed structural error by giving a definition of reasonable doubt in the jury charge." In addressing the burden of proof required for conviction, the trial court instructed the jury that the State must prove the defendant guilty of every element of the offense charged beyond a reasonable doubt. The instruction then stated: "The State is not required to prove that a person is guilty beyond all doubt; the State must simply exclude all reasonable doubt about the person's guilt." Appellant argues that this sentence improperly defines "reasonable doubt" in violation of *Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000). We have previously—and repeatedly—considered the substance of this instruction and held that it does not violate *Paulson* because it does not define reasonable doubt. *See O'Canas v. State*, 140 S.W.3d 695, 701–02 (Tex.

---

[1] Appellant's counsel argued:

> I'm asking you to find him not guilty because Carlos Lane did not do what the State alleged. One statement is not enough. It's not beyond a reasonable doubt, and it's not proof that Carlos Lane did anything to [A.S.].

App.—Dallas 2003, pet. ref'd); *see also Jackson v. State*, No. 05-19-01043-CR, 2021 WL 791095, at \*4–5 (Tex. App.—Dallas Mar. 2, 2021, pet. ref'd) (mem. op., not designated for publication) (collecting cases). The court's instruction "simply states the legally correct proposition that the prosecution's burden is to establish proof beyond a *reasonable* doubt and not *all possible* doubt . . . [and] does not attempt to aid jurors in determining whether their doubts are reasonable." *O'Canas*, 140 S.W.3d at 702 (emphasis original).

The trial court did not err in instructing the jury as it did here. We overrule appellant's third issue.

*Transfer of the Case*

In his fourth issue, appellant asserts that the trial court lacked jurisdiction to hear his case because the case was not transferred to its docket. Specifically, appellant contends that because the indictment was presented by the grand jury of the 194th District Court, jurisdiction vested in that court, and the record does not contain an order transferring the case to Criminal District Court No. 7. Thus, he contends, the trial court never acquired jurisdiction to hear appellant's case.

Appellant's counsel concedes that legal authority is contrary to this argument, which he has raised in this Court many times. "When a defendant fails to file a plea to the jurisdiction, he waives any right to complain that a transfer order does not appear in the record." *Keller v. State*, 604 S.W.3d 214, 231 (Tex. App.—Dallas 2020, pet. ref'd). Appellant did not file a plea to the jurisdiction in this case. He has

–11–

waived this complaint. Moreover, we have repeatedly rejected the substance of appellant's argument, even if it had been preserved. *See, e.g., Bourque v. State*, 156 S.W.3d 675, 678 (Tex. App.—Dallas 2005, pet. ref'd) (cases returned by a grand jury are not necessarily assigned to the court that impaneled the grand jury).

We overrule appellant's fourth issue.

## Conclusion

We affirm the trial court's judgment.

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE

211037f.u05

Do Not Publish
TEX. R. APP. P. 47

–12–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CARLOS BERNARD LANE,
Appellant

No. 05-21-01037-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7, Dallas County, Texas Trial Court Cause No. F18-76576-Y. Opinion delivered by Justice Pedersen, III. Justices Myers and Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 4th day of November, 2022.