**AFFIRM; and Opinion Filed August 19, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-01009-CR

### JOHNNY LEE CHAPIN, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the 291st Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F-1476200-U

## MEMORANDUM OPINION
Before Justices Bridges, Evans, and O'Neill[1]
Opinion by Justice O'Neill

A jury convicted Johnny Lee Chapin of family violence assault by impeding breath or circulation with a previous family violence conviction, a second degree felony. During the punishment phase, appellant stipulated to three prior convictions, and the jury sentenced him to twenty-five years in prison. In five issues, appellant argues: (1) the evidence is insufficient to prove he impeded the normal breathing of the complaining witness; (2) the trial court erred by admitting evidence of a prior family violence conviction at the guilt/innocence phase of trial; (3) the guilt/innocence jury charge erroneously failed to limit the mental state definitions to the applicable conduct elements of the indicted offense; (4) the guilt/innocence jury charge

---

[1] The Honorable Michael J. O'Neill, Justice of the Court of Appeals for the Fifth District of Texas—Dallas, Retired, sitting by assignment.

erroneously included a definition of reasonable doubt; and (5) the trial court lacked jurisdiction due to the absence of written transfer orders. We affirm the trial court's judgment.

## I. BACKGROUND

Johnny Lee Chapin was married to Louise Chapin. At trial, Louise testified that they were separated and she lived with her mother. Louise was four months pregnant. Even though she and appellant were separated, Louise asked him to go to a doctor's appointment with her because the doctor was going to give her test results on whether she had ovarian cancer. Steven, their seven-month-old son, was also with them. As Louise drove them home after her appointment, appellant began questioning why this appointment did not take as long as a previous appointment he had not attended. He accused Louise of "seeing somebody" and began yelling at her. He punched her twice on the side of her face and threatened to break her jaw. Although the car was traveling at sixty miles-per-hour, appellant shifted the car from drive to park, causing the car to stop abruptly in the highway. Louise put the car back in drive but the car did not move. She was finally able to get the gears to engage and inched over to the side of the highway. She told appellant to get out of the car, but he refused. Louise drove to her mother's house because she knew people were there. As they approached the house, appellant started yelling at Louise again and tried to grab the steering wheel. The car swerved, hit a pothole, and came to a stop in front of her mother's house.

Louise testified that appellant started yelling that he was going to take their seven-month-old son with him. She grabbed the car keys and jumped out of the car to get Steven. But as she tried to get Steven unbuckled from his car seat, appellant wrapped his right arm around her neck and started choking her. Louise testified she could not even breathe enough to scream. She said her sister saw what was going on and ran to her rescue. Appellant was trying to grab the car keys but Louise threw them as far as she could, into her mother's yard. Louise testified that

appellant had her in the choke hold for at least thirty seconds to a minute. She told the jury that while he was choking her, she wondered whether this was it and whether this was killing her unborn child. As soon as appellant let go, she grabbed Steven and ran for the house. She testified she had to gasp for air, her neck was sore, and it was hard for her to swallow. While Louise called 911, appellant broke out the windows of her car with a tire iron and drove away in his truck.

Louise's sister, Terrie Patton, testified that she was in front of her mother's house when she saw her sister's car drive up and come to a complete halt in the road. As she watched, the car turned and hit the ditch where there is a large hole. Terrie testified that Louise got out of the front driver's side door of the car and went to the back driver's side door, directly behind her. Meanwhile, appellant got out of the front passenger's side door and came around the car to the back driver's side door. Terrie was already walking toward the car when she saw her sister throw her keys into the yard. At that point, Terrie knew something was not right and started for the gate. She saw appellant behind Louise, and he had one arm around her neck. With his other hand, he was holding Louise's wrist so Louise could not move his arm. Terrie testified that her sister was not making a sound. Terrie screamed at appellant until he let go of Louise. Louise caught her breath, grabbed Steven, and ran inside the house. Terrie watched appellant go across the street, get in his truck, and pull out of the driveway. He stopped his truck, got out, and broke out both windows on the driver's side of Louise's car. He then got back in his truck and left.

Amber Guyger, an officer with the Dallas Police Department, testified that she was dispatched to 8634 Cardella Avenue, Dallas, Texas, on a family violence call. She talked to Louise Chapin. Officer Guyger described Louise as afraid, scared, and frantic. She said that Louise was afraid that appellant would come back. Officer Guyger obtained statements from Louise and her sister and took photographs of Louise's injuries. Although Officer Guyger noted

–3–

red marks on Louise's arm, she did not see any marks on Louise's neck. Officer Guyger saw a car parked on the side of the street with broken windows.

Appellant was arrested and charged with assault, impeding the normal breathing of a family member, with a previous conviction for family violence assault. A jury convicted appellant as charged. After appellant stipulated to three enhancement paragraphs, the jury sentenced him to twenty-five years in prison. This appeal followed.

## II. DISCUSSION

### A. Sufficiency of the Evidence

In his first issue, appellant argues the evidence is insufficient to prove beyond a reasonable doubt that he impeded his wife's breathing. We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Acosta v. State*, 429 S.W.3d 621, 624 (Tex. Crim. App. 2014). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Acosta*, 429 S.W.3d at 624–25. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see also Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). We defer to the jury's determinations of credibility and may not substitute our judgment for that of the jury. *Jackson*, 443 U.S. at 319; *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014). When there is conflicting evidence, we must presume the factfinder resolved the conflict in favor of the verdict, and defer to that resolution. *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative

–4–

force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another person. TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2015). The offense is generally a Class A misdemeanor but is elevated to a second degree felony if (1) the offense is committed against a person with whom appellant has or has had a dating relationship, or a family or household member; (2) appellant had a prior conviction for assault involving family violence, and (3) "the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." *Id*. § 22.01(b-1).

Appellant asserts that he did not impede Louise's breathing by choking her; instead, he suggests she became short of breath because she was upset and about to cry. At trial, Louise testified that appellant put her in a "chokehold" by wrapping his arm around her neck and choking her. She testified she could not breathe, and could not even breathe enough to scream for help. She estimated that appellant choked her for thirty to sixty seconds. Louise's testimony was corroborated by the testimony of her sister, Terrie Patton. Terrie testified that she saw appellant's arm around Louise's neck and it looked like he was squeezing. She also testified that Louise did not make a sound. The jury heard the recording of Louise's 911 call. Louise told the 911 dispatcher that appellant hit her in the face and nose and choked her when she got out of the car to get her baby. The jury also heard Officer Guyger's testimony that she did not see any marks on Louise's neck. Guyer told the jury that in her experience, you do not always see marks on a person who says they have been strangled. Guyer explained that strangling someone with your hands will leave marks from your nails and fingers, but strangling someone with your forearm will not leave marks because it is the muscle of the forearm putting pressure on the neck.

–5–

The jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). When reviewing the evidence in the light most favorable to the verdict, we are required to defer to the jury's credibility and weight determinations. *Clayton*, 235 S.W.3d at 778. We conclude the evidence is sufficient to permit rational jurors to find that appellant impeded Louise's normal breathing. We overrule appellant's first issue.

## B. Evidence of Prior Conviction at Guilt/Innocence

In his second issue, appellant contends the trial court erred by allowing the State to present appellant's prior conviction for assault, family violence at the guilt/innocence phase of the trial. Appellant argues the prior conviction was a punishment enhancement, not an element of the indicted offense. We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009) (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)).

In determining whether a prior conviction is an element of the offense or serves as an enhancement, we begin with the text of the statute. *See Calton v. State*, 176 S.W.3d 231, 234 (Tex. Crim. App. 2005). The plain language of section 22.01(b-1) of the penal code demonstrates that the second-degree felony offense of family violence assault by impeding breath or circulation with a previous family violence conviction is committed when appellant (1) intentionally, knowingly, or recklessly causes bodily injury; (2) to another; (3) with whom appellant has or has had a dating relationship, or with whom appellant is a family or household member; (4) appellant had a prior conviction for assault involving family violence; and (5) appellant impeded the normal breathing or circulation of the person. *See* TEX. PENAL CODE

–6–

ANN. § 22.01(b-1). The statute is not ambiguous. It defines the offense as occurring when the defendant has previously been convicted of assault involving family violence. Clearly, the prior conviction is an essential element of the second-degree felony offense. *See Wingfield v. State*, 481 S.W.3d 376, 379 (Tex. App.—Amarillo 2015, pet. ref'd); *Reyes v. State*, 314 S.W.3d 74, 81 (Tex. App.—San Antonio 2010, no pet.).

When the prior conviction is an element of the offense, it must be proven at the guilt/innocence phase of the trial. *See Calton*, 176 S.W.3d at 234; *see also State v. Karamvellil*, No. 05-08-00549-CR, 2008 WL 5147116, at *3 (Tex. App.—Dallas Dec. 9, 2008, pet. ref'd) (mem. op.) (not designated for publication). Thus, the State had to plead and prove at the guilt/innocence phase of trial both that the current assault involved family violence and that appellant had a previous conviction for an assault involving family violence. *See Wingfield*, 481 S.W.3d at 379; *Reyes*, 314 S.W.3d at 81; *Guzman v. State*, No. 05-15-00865-CR, 2016 WL 462894, at *1 (Tex. App.—Dallas Feb. 5, 2016, no pet.) (mem. op.) (not designated for publication). Accordingly, we conclude the trial court did not err by allowing the State to present appellant's prior conviction for assault, family violence at the guilt/innocence phase of the trial. We overrule appellant's second issue.

## C. Jury Charge Error

In his third and fourth issues, appellant complains about the jury charge given at the guilt/innocence phase. In his third issue, appellant contends the trial court erred by submitting a jury charge that failed to limit the definition of the culpable mental states to the result of appellant's conduct. In his fourth issue, appellant contends the trial court erred by including a definition of reasonable doubt. Appellant failed to make either of these objections in the trial court.

Appellate review of purported error in a jury charge involves a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). We first determine if the jury charge was erroneous. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015); *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). If error exists, we then determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). When, as in this case, the error was not objected to, the error must be "fundamental" and requires reversal "only if it was so egregious and created such harm that the defendant 'has not had a fair and impartial trial.'" *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). Egregious harm exists when the record shows that a defendant has suffered actual, rather than merely theoretical, harm from jury-charge error. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013). Egregious error consists of error affecting the very basis of the case, depriving the defendant of a valuable right, or vitally affecting a defensive theory. *Id.* (citing *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)). We assess harm in light of the entire jury charge, the state of the evidence, including contested issues, the arguments of counsel, and any other relevant information revealed by the record as a whole. *Id.*

### 1. Mental State Definitions

Appellant asserts the trial court erred by failing to limit the definitions of "intentionally," "knowingly," and "recklessly" to the applicable conduct element. There are three "conduct elements" that can be involved in an offense: (1) the nature of the conduct, (2) the result of the conduct, and (3) the circumstances surrounding the conduct. TEX. PENAL CODE ANN. § 6.03 (West 2011); *see also Price*, 457 S.W.3d at 441. "In a jury charge, the language in regard to the culpable mental state must be tailored to the conduct elements of the offense." *Price*, 457 S.W.3d at 441. A trial court errs when it does not limit the language in regard to the applicable

culpable mental states to the appropriate conduct element. *See id*.; *see also Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995).

Appellant argues, and the State agrees, that family violence assault by impeding normal breathing is a "result of the conduct" offense. Therefore, the jury charge should have contained only that portion of the statutory definition corresponding to the result of conduct element required for the offense. *See Ash v. State*, 930 S.W.2d 192, 194 (Tex. App.—Dallas 1996, no writ). Instead, the portion of the jury charge that contained the mental state definitions tracked the statutory definitions of the culpable mental states, giving full definitions for "intentionally," "knowingly," and "recklessly" without limiting the definitions to the result of conduct. *See* TEX. PENAL CODE ANN. § 6.03. Appellant argues he was egregiously harmed by the complained-about instruction because it improperly focused the jury on the nature of the conduct and not on the result of the conduct. The State responds that if there was error in the charge, any error was harmless. We agree with the State.

Even assuming it was error for the charge to include the full statutory definitions of "intentionally," "knowingly," and "recklessly," we conclude the appellant was not egregiously harmed. We first consider the entire jury charge. *See Almanza*, 686 S.W.2d at 171. Regardless of the way in which the offense of family violence assault by impeding normal breathing is characterized, when the application paragraph of the charge correctly instructs the jury on the law applicable to the case, any error in the abstract instruction is not egregious. *See Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *Pierce v. State*, No. 05-12-01211-CR, 2013 WL 6196275, at *7 (Tex. App.—Dallas Nov. 25, 2013, no pet.) (mem. op.) (not designated for publication).

The application portion of the charge provided:

Now, if you find from the evidence beyond a reasonable doubt that on or about August 19th, 2014, in Dallas County, Texas, the defendant, JOHNNY LEE

CHAPIN, did then and there intentionally, knowingly or recklessly cause bodily injury to another, namely LOUISE CHAPIN, hereinafter called complainant, by squeezing complainant's neck with an arm and the said defendant has or has had a dating relationship with the said complainant or the said defendant was a member of the complainant's family or household, and the defendant committed the said offense by intentionally, knowingly, or recklessly impeding the complainant's normal breathing or circulation of blood by applying pressure to the complainant's throat or neck or by blocking the complainant's nose or mouth, and the defendant has been previously convicted of an offense under Texas Penal Code Chapter 19 and 22, Sections 20.03, 20.04, 21.11 and 25.11 committed against a member of the defendant's family or household or a person with whom the defendant has or has had a dating relationship: Assault Bodily Injury Family Violence on or about the 15th day of August 2011, in the 422nd District Court of Kaufman County, Texas in Cause number 29396-422, you shall find the defendant guilty of Family Violence Assault by Impeding Breath or Circulation with a Previous Family Violence Conviction as charged in the indictment.

In the application paragraph, the mental states "intentionally," "knowingly," and "recklessly" directly modify the result of the conduct (causing bodily injury to another). *See Ash*, 930 S.W.2d at 195. Contrary to appellant's assertion, the application paragraph also specifically describes the manner and means of committing the offense (causing bodily injury to Louise by squeezing her neck with his arm). *See id.* ("The application portion of the charge, which specifically describes the manner and means of committing the offense, i.e., committing bodily injury by 'striking the complainant's head repeatedly against the pavement,' would tend to limit the culpable mental states to the result of appellant's conduct."). We conclude the application paragraph sufficiently limited the culpable mental states of "intentionally," "knowingly," and "recklessly" to their relevant conduct element, result of conduct.

When we review the second *Almanza* factor, the state of the evidence, we find testimony that appellant intentionally, knowingly, or recklessly caused the result of his conduct. Appellant put his arm around Louise's neck and squeezed, impeding her normal breathing. The third *Almanza* factor is the arguments of counsel. *Almanza*, 686 S.W.2d at 171. Appellant's trial counsel generally argued that there was reasonable doubt that the events alleged in the indictment had even occurred. Appellant's arguments did not pertain to the culpable mental

–10–

states or rely on their definitions.  Finally, *Almanza* instructs that we should consider any other relevant information in the record.  *Id*.  We have reviewed the record and find no additional relevant information affecting our decision.

Based on the foregoing, we conclude that the erroneous mental state instruction did not cause appellant to suffer egregious harm.  We therefore resolve appellant's third issue against him.

### 2.  Reasonable Doubt Definition

In his fourth issue, appellant argues the trial court "committed structural error" by giving the jury a definition of reasonable doubt in the charge on guilt/innocence.  Appellant did not object to this jury instruction, which stated:  "it is not required that the prosecution prove guilt beyond all possible doubt; it is only required that the prosecution's proof exclude all reasonable doubt concerning the defendant's guilt."

We rejected this argument in *O'Canas v. State*, 140 S.W.3d 695, 700–02 (Tex. App.—Dallas 2003, pet. ref'd).  In that case, we held that the instruction "simply states the legally correct proposition that the prosecution's burden is to establish proof beyond a *reasonable* doubt and not *all possible* doubt."  *Id*. at 702.  Appellant acknowledges our prior decision but disagrees with our analysis in *O'Canas*.  He argues the quoted language is a definition, and *Paulson v. State*, 28 S.W.3d 570, 572 (Tex. Crim. App. 2000), prohibits defining reasonable doubt.

Since 2003, we have rejected appellant's argument in cases involving this exact instruction.  *See Bates v. State*, 164 S.W.3d 928, 931 (Tex. App.—Dallas 2005, no pet.); *Washington v. State*, No. 05-14-00604-CR, 2015 WL 4178345, at *7 (Tex. App.— Dallas July 10, 2015, no pet.) (not designated for publication).  Further, the court of criminal appeals has held that a trial court does not abuse its discretion in giving the complained-of instruction.  *See Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010); *Woods v. State*, 152 S.W.3d 105,

115 (Tex. Crim. App. 2004). We decline appellant's urging to re-visit our *O'Canas* opinion. The instruction did not define reasonable doubt, and the trial court did not err by including it in the jury charge. We overrule appellant's fourth issue.

## D. Trial Court Jurisdiction

In his fifth issue, appellant contends the trial court lacked jurisdiction because the case was originally presented for indictment in a different trial court, and there were no written orders transferring the case to the court that tried the case and rendered judgment. If a defendant fails to file a plea to the jurisdiction, he waives any right to complain that a transfer order does not appear in the record. *Lemasurier* v. State, 91 S.W.3d 897, 899–900 (Tex. App.—Fort Worth 2002, pet. ref'd). There was no such plea here.

Moreover, even if appellant's complaint had been preserved for our review, we have repeatedly addressed and rejected this argument. *See Bourque v. State*, 156 S.W.3d 675, 678 (Tex. App.—Dallas 2005, pet. ref'd); *Halton v. State*, No. 05-14-00640-CR, 2015 WL 3991827, at *13 (Tex. App.—Dallas July 1, 2015, no pet.) (mem. op.) (not designated for publication). We conclude this issue is without merit and overrule appellant's fifth issue.

### III.  CONCLUSION

Having overruled all of appellant's issues, we affirm the judgment of the trial court.

/Michael J. O'Neill/
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
MICHAEL J. O'NEILL
JUSTICE, ASSIGNED

Do Not Publish
TEX. R. APP. P. 47

151009F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOHNNY LEE CHAPIN, Appellant

No. 05-15-01009-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1476200-U.
Opinion delivered by Justice O'Neill.
Justices Bridges and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 19th day of August, 2016.