**Affirmed as Modified and Opinion Filed July 13, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-21-00784-CR

**RUBEN LABRADA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1875816-V**

## MEMORANDUM OPINION

Before Justices Molberg, Pedersen, III, and Miskel
Opinion by Justice Miskel

Ruben Labrada appeals the trial court's judgment convicting him of murder. The jury found him guilty and assessed his punishment at imprisonment for life.

Labrada raises four issues on appeal arguing as follows: (1) the evidence is insufficient to identify him as the murderer; (2) the trial court erred when it excluded evidence he sought to admit; (3) he suffered egregious harm when the trial court instructed the jury as to good conduct time; and (4) the trial court erred when it included a definition of reasonable doubt in the jury charge. In a cross-issue, the

State argues the judgment should be modified to reflect that Labrada pleaded not guilty to the offense.

We conclude the evidence was sufficient. Also, we conclude the trial court did not err when it excluded evidence, and even if there was jury-charge error, Labrada did not suffer egregious harm. And the trial judge erred when he signed a judgment with mistakes in it. The trial court's judgment is affirmed as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Juana "Katalina" Parga and Jose "Ramone" Perales Labrada (Jose)[1] were in a relationship and had a son together. They lived in a five-bedroom house with other family members, including Jose's younger brother, Labrada. Jose worked for Vanguard Plastics, and Labrada worked at the same location for The Die Shop, but they worked different days and hours. Jose owned three vehicles: (1) a white Isuzu truck driven by Parga and Jose; (2) a Nissan Maxima driven by Labrada; and (3) a red Hyundai hatchback.

At some point, Parga also began having a romantic relationship with Labrada. Other family members were aware, or at least suspected, that Parga was having an affair with Labrada. However, family members held differing views as to whether Jose knew or suspected Parga was in a relationship with his brother. The night before May 5, 1997, Jose's son from an earlier marriage who shared a room with

---

[1] We will refer to Jose Labrada by his first name to avoid confusing him with the appellant whom we refer to as Labrada.

Labrada was awakened by an intoxicated Labrada who was looking into a mirror and saying to himself, "Should I break him? Should I break him? . . . . No, I can't do that, you know he's . . . my blood."

On the morning of May 5, 1997, Parga left the house in the white Isuzu truck at around 9:30 a.m. to go to work. A short time afterward, Jose and his son from a prior relationship left the house. First, they went to Jose's place of employment where Jose learned that Labrada had not reported for work, then they went shopping for car stereos.

Later that afternoon, Parga's body was found in the white Isuzu truck parked at Valley View Park in Dallas, Texas. Parga's clothes were soaked with blood, and she appeared to have been stabbed. It also appeared that Parga had struggled with her assailant because there was blood all over the inside of the truck and Parga had multiple defensive wounds on her hands. The police collected blood samples and a knife from the inside of the truck. They also obtained a bloody fingerprint from the knife handle. In addition, the police found a letter from the Dallas County District Attorney's Office addressed to Parga relating to a December 1996 misdemeanor assault where Jose was the defendant and Parga was the complainant.

When Jose and his son returned to the house, the police were present and informed them of Parga's murder. Jose cooperated with the police investigation. Neither Jose nor his son had any cuts or wounds. Although Labrada would have ordinarily been at the house at that time, he was not there.

That evening, Labrada went to his friend Manuel Aguirre's store, confessed that he had killed his "morrita," or girlfriend, and showed Aguirre some bloody clothes inside the trunk of the Nissan Maxima that Labrada was driving and a cut on one of Labrada's arms. Labrada stayed until Aguirre's store closed then told Aguirre he was going to the field where they often played soccer. Labrada was not seen again for several years.[2]

Later that evening, one of Labrada's sisters went to Aguirre's apartment looking for Labrada. She told Aguirre that Labrada had done "something really wrong," but she did not specify what that was. Aguirre told her that Labrada had gone to the soccer field. Afterward, Aguirre saw media coverage of Parga's murder and connected it with Labrada stating he had killed his "morrita."

A few days later, Jose saw Aguirre and asked if he knew what had happened. Aguirre told Jose that Labrada had confessed to him. Jose said that he was not going to do anything with the information because he did not want to upset his mother. Aguirre decided not to go to the police because he also loved Labrada's mother and did not want to upset her by being the person who came forward and implicated Labrada in Parga's murder. Also, four days after Parga's murder, Jose's son from a prior relationship found Labrada's Nissan Maxima abandoned in a parking lot near the field where Labrada frequently played soccer.

---

[2] There was some testimony that Labrada briefly returned for a holiday or family gathering.

An autopsy of Parga's body revealed that she had ten stab wounds and 41 incised wounds. The medical examiner concluded that Parga died as a result of multiple sharp force injuries and her manner of death was homicide.

During the investigation, Detective Glenda Crum was unable to locate Labrada and learned that he had fled to Mexico. Because the police were not able to locate Labrada, the case eventually went "cold" and was suspended on February 20, 1998.

In 2017, the case was reopened by Detective David Gilmore. During his investigation, he met with Jose at the Mexican border and obtained a DNA sample, he learned that Labrada had returned the United States, and he identified a new witness, Aguirre. Labrada was eventually located and apprehended in Oklahoma. A forensic fingerprint expert also determined that the latent bloody fingerprint on the handle of the knife used to kill Parga was from Labrada's right little finger. Further, DNA evidence linked both Labrada and Jose to some of the samples collected at the murder scene in 1997.

Labrada was indicted for murder. During his trial, Labrada's defensive theory was that Jose murdered Parga because Jose was enraged Parga was having an affair with Labrada. A jury found him guilty and assessed his punishment at imprisonment for life.

## II.  SUFFICIENCY OF THE EVIDENCE

In issue one, Labrada argues the evidence is insufficient to identify him as the murderer.  He contends the evidence that his brother Jose murdered Parga is so great that it negates the possibility that he committed the offense such that the jury was not rationally justified in finding him guilty beyond a reasonable doubt.  The State responds that Labrada had the motive and opportunity to murder Parga, and he confessed to Aguirre that he murdered Parga before fleeing and avoiding apprehension for 21 years.

### A.  Standard of Review

Under the Due Process Clause, a criminal conviction must be based on legally sufficient evidence.  *Harrell v. State*, 620 S.W.3d 910, 913 (Tex. Crim. App. 2021).  When reviewing the sufficiency of the evidence, an appellate court considers all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Harrell*, 620 S.W.3d at 913–14.  Further, an appellate court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight assigned to their testimony.  *See Jackson*, 443 U.S. at 319, 326; *Harrell*, 620 S.W.3d at 914.  An appellate court will consider all evidence when reviewing the sufficiency of the evidence, whether direct or circumstantial, properly or improperly admitted,

or submitted by the prosecution or defense. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

### B. Applicable Law

A person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1). A person acts intentionally, or with intent, when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a). A person acts knowingly, or with knowledge, when he is aware of the nature of his conduct or that the circumstances exist, or that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

Direct evidence of the elements of the offense, including the identity of the perpetrator and culpable mental state, is not required. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007). Identity may be proven by direct evidence, circumstantial evidence, or by reasonable inferences from the evidence. *Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2018). The jury is permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor. *Hooper*, 214 S.W.3d at 14–15. Circumstantial evidence alone may be sufficient to establish guilt. *Id.* at 15.

### C. Evidence is Sufficient to Prove Identity

Labrada challenges only the sufficiency of the evidence establishing his identity as the perpetrator. He does not challenge the other elements of the offense.

As a result, we focus our analysis on the evidence linking him to the offense. The record shows that Labrada was having an affair with Parga who was in a relationship with his older brother, Jose. It also shows that Labrada made statements the night before Labrada's murder that suggested his was contemplating "breaking his brother." And he confessed to Aguirre on the afternoon of the murder that he killed his "morrita." Further, Labrada was linked to the crime through fingerprint and DNA evidence. In addition, Labrada disappeared for years after the murder.

The crux of Labrada's argument is that the evidence is insufficient because there was evidence that also suggested his brother, Jose, committed the offense. This argument goes to the jury's assessment of the weight and credibility of the evidence rather than the sufficiency of the evidence presented at trial. However, we are required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility, and the weight to be given to their testimony. *See Jackson*, 443 U.S. at 319, 326; *Harrell*, 620 S.W.3d at 914.

After reviewing the evidence, we conclude that a rational jury could have found that Labrada committed the offense beyond a reasonable doubt. Accordingly, we conclude the evidence is sufficient to support Labrada's conviction for murder.

Issue one is decided against Labrada.

### III. EXCLUSION OF EVIDENCE

In issue two, Labrada argues the trial court erred when excluded evidence he sought to admit. He contends the trial court should have admitted evidence that his

brother had beaten Parga unconscious a short time before the murder, including the document the police found in the truck at the time of Parga's murder to that effect. Although Labrada focuses his argument on Texas Rule of Evidence 403, the substance of his argument is that he was unable to present his defense—it was his brother who murdered Parga. The State responds that Labrada failed to preserve this issue for appellate review. In the alternative, the Sate argues the trial court did not abuse its discretion because Labrada already had other compelling and undisputed evidence before the jury establishing Jose as a possible, alternative perpetrator due to the pending assault charge. Further, the State contends that even if the trial court erred, Labrada cannot show that error was harmful error.

### A. Applicable Law

The erroneous exclusion of evidence generally constitutes non-constitutional error and is reviewed under Rule 44.2(b) of the Texas Rules of Appellate Procedure. *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007). However, an exception exists when erroneously excluded evidence offered by a criminal defendant forms such a vital portion of the case that its exclusion effectively precludes the defendant from presenting a defense. *Id.* When a trial court sustains the State's objection to the admission of a defendant's evidence, a federal due process violation may arise only if: (1) a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence vital to his defense; or (2) the trial court's clearly erroneous ruling results

–9–

in the exclusion of admissible evidence that forms the vital core of a defendant's theory of defense and effectively prevents him from presenting that defense. *Easley v. State*, 424 S.W.3d 535, 540 (Tex. Crim. App. 2014); *Walters*, 247 S.W.3d at 219. When this transpires, the standard for constitutional errors under Rule 44.2(a), applies. *Walters*, 247 S.W.3d at 219. In contrast, when the excluded evidence does not prevent a defendant from presenting a defense, but only incrementally furthers a defensive theory, any corresponding error is non-constitutional and the harm standard articulated in Rule 44.2(b) applies. *See id.* at 222.

### B. Labrada was Able to Present His Defense

Assuming without deciding the trial court erred, we review whether that alleged error constituted harmful error. During the trial, the trial court held a hearing outside the presence of the jury because Labrada had been precluded from "go[ing] into the underlying facts of the misdemeanor assault case" against Jose. At that time, Defendant's Exhibit No. 5, the arrest report for that assault which was found in the white Isuzu truck with Parga's body, was admitted for record purposes. At the conclusion of the hearing, the trial court excluded any evidence of the underlying facts of Jose's alleged assault of Parga on the basis that it was not relevant and its probative value was substantially outweighed by its prejudicial effect.

Labrada's defensive theory was that Jose murdered Parga because Jose was enraged Parga was having an affair with Labrada. He maintains that this shows Jose had a motive to kill Parga and that he did not. Although the trial court excluded a

–10–

copy of the arrest report and testimony relating to the specific details of the alleged assault, the record shows that Labrada was able to elicit general testimony about Jose's arrest for assaulting Parga. In particular, Detective Gilmore testified that he was aware of an assault involving family violence, that the police department had filed charges against Jose for that assault, and that there was an envelope removed from underneath the seat of the truck with a letter to Parga in reference to an assault by Jose. In addition, Detective Crum testified that, in the truck, police found correspondence to Parga about an upcoming court date for a case pending against Jose where she was the victim and a witness, and that Parga was murdered a month and a half before that trial date. Accordingly, we conclude that any error in excluding the evidence was non-constitutional in nature. *See Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005) (concluding court of appeals did not err in declining to apply constitutional harm analysis when exclusion of evidence did not prevent appellant from presenting her defense). Because any error was non-constitutional, we apply the harm standard under Rule 44.2(b). *Walters*, 247 S.W.3d at 219.

Under Rule 44.2(b), we must disregard any error that does not affect Labrada's substantial rights. *See* TEX. R. APP. P. 44.2(b). We cannot overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or only influenced the jury slightly. *Barshaw v. State*, 342 S.W.3d 91, 93–94 (Tex. Crim.

App. 2011). We have already discussed that the record shows Labrada was not precluded from presenting evidence that a document about the alleged assault of Parga by Jose was found in the truck. Further, during closing argument, defense counsel argued that the detectives did not follow up on that document. And he argued that it was a reasonable inference from the evidence that Jose caught Parga having an affair with Labrada, then went to the park with Parga to discuss things and killed her. After reviewing the record as a whole, we conclude that the trial court's exclusion of evidence relating to the specific details of Jose's alleged assault of Parga did not affect Labrada's substantial rights.

Issue two is decided against Labrada.

## IV. JURY CHARGE ERROR

In issues three and four, Labrada argues as follows: (1) he suffered egregious harm when the trial court instructed the jury as to good time conduct in the punishment charge; and (2) the trial court erred when it included a definition of reasonable doubt in the guilt-phase jury charge.

### A. Standard of Review

All alleged jury-charge error must be considered on appellate review regardless of whether it was preserved in the trial court. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). When presented with an argument that a trial court committed jury charge error, the reviewing court must conduct a two-step

inquiry: (1) Did an error occur?; and (2) If so, did it cause harm that rises to the level of reversible error? *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).

The degree of harm necessary for reversal depends on whether the defendant preserved the error by objection. *Id.* If a defendant preserved error, then he only has to show "some harm" to his rights. *Id.* If he failed to object, he must demonstrate "egregious harm." *Id.*

## B. Instruction on Good Time Conduct

In issue three, Labrada argues he suffered egregious harm when the trial court instructed the jury as to good conduct time in the punishment charge. He argues the punishment charge did not comply with article 37.07 of the Texas Code of Criminal Procedure because the legislature removed the language relating to good conduct time from the statute by amendment in 2019. As a result, Labrada contends that the charge's statements with respect to good conduct time are a clear error of the law and always constitute egregious harm. The State concedes that the language relating to good conduct time was incorrectly included in the punishment charge but maintains that Labrada did not suffer egregious harm as a result of its inclusion.

### 1. Applicable Law

Errors that result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive. *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011). Egregious harm is a high and

–13–

difficult standard to meet, and such a determination must be borne out by the trial record. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). An egregious harm determination must be based on a finding of actual rather than theoretical harm. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015).

The egregious harm inquiry is fact specific and must be performed on a case-by-case basis. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013). In making an egregious harm determination, an appellate court considers: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the trial record as a whole. *See Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

### 2. Labrada Did Not Suffer Egregious Harm

The trial court's charge in the punishment phase of the trial stated, in part:

Under the law applicable to this case, the defendant may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole. Under the law applicable to this case, the defendant will not become eligible for parole until the actual time earned equals one-half of the sentence imposed or 30 years, whichever is less. Eligibility for parole does not guarantee that parole will be granted.

It cannot be accurately predicted how the parole law might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law. You are not to consider the manner in which the parole law may be applied to this particular defendant.

The parties agree that the trial court's instruction in the punishment charge as to good conduct time was error. And this Court has previously determined that a charge that contains language the legislature removed by amendment from article 37.07 in 2019 constitutes error. *Taylor v. State*, No. 05-20-00017-CR, 2022 WL 17335689, at *12 (Tex. App.—Dallas Nov. 30, 2022, pet. ref'd) (mem. op., not designated for publication). However, we also reviewed that error for egregious harm. *Id.* Accordingly, because Labrada did not object to this error, he is entitled to a reversal only if he suffered egregious harm as a result of the error. As a result, we examine the record for egregious harm.

First, we consider the entire charge to the jury in the punishment phase of the trial. Although the charge contained language about good conduct time that was no longer required under article 37.07, it also instructed the jurors that they were "not to consider the manner in which the parole law may be applied to this particular defendant." The charge correctly instructed the jury on the matters to be considered in deliberations, the burden of proof, and the requirement of unanimity. Further, absent evidence that the jury was actually confused by the charge, we assume the jury followed the trial court's instruction that it was "not to consider the manner in

–15–

which the parole law may be applied to this particular defendant." *See Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996). There is no evidence of jury confusion. The jury did not send any notes or questions expressing confusion about good conduct time, parole, or their application. The charge correctly instructed the jury regarding the range of punishment. However, the jury assessed Labrada's punishment at the maximum sentence—imprisonment for life. We conclude the first factor does not weigh in favor of or against finding egregious harm.

Second, we consider the state of the evidence. Under this factor, we determine whether the evidence made it more or less likely that the charge error caused appellant actual harm. *Taylor*, 2022 WL 17335689, at *13. We must determine the likelihood that the jury would in fact have reached a non-unanimous verdict on the facts of this particular case. *Id.* The evidence at the punishment phase focused on Labrada's sexual abuse of his niece who did not report the abuse until later because her grandmother, who was also Labrada's mother, was very protective of him, and the effect of the murder on Parga's son who was two years old at the time of her murder. No evidence was offered regarding possible parole or good conduct time. We conclude the state of the evidence made it less likely that the jury charge caused appellant actual harm. Consequently, this factor weighs against finding egregious harm.

Third, we consider whether any arguments made by the State, Labrada, or the trial court exacerbated or ameliorated the error in the charge. *Id.* There was no

mention of good conduct time by the State, Labrada, or the trial court except in the charge language quoted earlier in this opinion. And that language instructed the jury not to consider the manner in which parole may be applied. The State did mention parole during the punishment-phase closing argument, stating as follows:

> So now what is this case worth? This case is worth life in prison, and I will tell you why, and why I'm not talking about life without parol[e].

> As the [trial] [j]udge explained in the Jury Charge, he's still eligible for parole, but we can't go through and we're not going to go through that, but I want you to remember this is not a life without parol[e] case.

The record shows the State's comments were done in the context of clarifying why the case was not a "life without parole" case. We conclude this factor weighs against finding egregious harm.

Finally, we consider any other relevant information, such as whether the jury sent requests for clarification during deliberations. *Id.* The record reveals no jury notes during the punishment phase or any other indication that the jury sought any clarification regarding good conduct time or parole. We conclude the final factor weighs against finding egregious harm.

After considering and weighing all of the relevant factors, we conclude that the erroneous instructions regarding good conduct time did not cause actual harm to appellant. Nor did the erroneous jury instructions affect the very basis of the case, deprive Labrada of a valuable right, or vitally affect a defensive theory.

Issue three is decided against Labrada.

## C.  *Reasonable-Doubt Jury Instruction*

In issue four, Labrada argues the trial court erred when it improperly defined "reasonable doubt" in violation of *Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000), in the jury charge.  Labrada asks this Court to overrule its prior precedent holding that the instruction used in this case is not a definition of reasonable doubt.  He also maintains that a reversal for this type of error should not be subject to a harm analysis.  The State responds that this Court has previously held the complained-of instruction in the guilt-phase jury charge does not improperly define reasonable doubt.

### 1.  Applicable Law

In *Paulson*, the Texas Court of Criminal Appeals overruled the portion of *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991) that required trial courts to instruct juries on the definition of reasonable doubt.  *Paulson*, 28 S.W.3d at 573.  The Texas Court of Criminal Appeals stated that the better practice is to give no definition of reasonable doubt at all to the jury.  *Id.*

However, when a jury charge merely refers to "reasonable doubt" by stating, "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt," it does not violate *Paulson* because it does not define reasonable doubt.  *Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010); *Woods v. State*, 152 S.W.3d 105, 115 (Tex. Crim. App. 2004); *see also*, *Keller v. State*, 604 S.W.3d

–18–

214, 230–31 (Tex. App—Dallas 2020, pet. ref'd); *Bates v. State*, 164 S.W.3d 928, 931 (Tex. App.—Dallas 2005, no pet.); *O'Canas v. State*, 140 S.W.3d 695, 701–02 (Tex. App.—Dallas 2003, pet. ref'd). This instruction simply states the legally correct proposition that the prosecution's burden is to establish proof beyond a reasonable doubt and not all possible doubt. *O'Canas v. State*, 140 S.W.3d at 702.

### 2. Jury Charge Did Not Define Reasonable Doubt

The charge in this case merely referred to "reasonable doubt," stating "It is not required that the prosecution proves guilt beyond all possible doubt; it is required that the prosecution's proof excludes all reasonable doubt concerning the Defendant's guilt." Labrada concedes that he did not object to this statement in the jury charge. And, Labrada acknowledges, we have on numerous occasions considered this instruction and held that it does not violate *Paulson* because it does not define reasonable doubt. *See, e.g., Bates*, 164 S.W.3d at 931; *O'Canas*, 140 S.W.3d at 701–02; *Washington v. State*, No. 05-14-00604-CR, 2015 WL 4178345, at *7 (Tex. App.—Dallas July 10, 2015, no pet.) (mem. op., not designated for publication) (noting this Court has rejected this argument on so many occasions that there are far too many cases to list). Further, the Texas Court of Criminal Appeals has held that the trial court does not abuse its discretion by giving this same instruction. *Mays*, 318 S.W.3d at 389; *Woods*, 152 S.W.3d at 115. As an intermediate court of appeals, we are bound by the precedent of the Texas Court of Criminal Appeals and have no authority to disregard or overrule it. *See* TEX. CONST.

–19–

art. 5, § 5 ("The Court of Criminal Appeals shall have final appellate jurisdiction . . . and its determinations shall be final. . . ."); *State ex rel. Wilson v. Briggs*, 351 S.W.2d 892, 894 (Tex. Crim. App. 1961) ("The Court of Criminal Appeals is the court of last resort in this state in criminal matters. This being so, no other court of this state has authority to overrule or circumvent its decisions, or disobey its mandates."); *Reyes v. State*, No. 05-19-00952-CR, 2021 WL 1884769, at *3 (Tex. App.—Dallas May 11, 2021, no pet.) (mem. op., not designated for publication).

We again reject this argument and decline to re-evaluate the holdings of the Texas Court of Criminals Appeals or the holdings of this Court with respect to this issue. We conclude the trial court's instruction did not define reasonable doubt, and the trial court did not err by including it in the jury charge.

Issue four is decided against Labrada.

## V. MODIFICATION OF THE JUDGMENT

In a cross issue, the State argues the trial court's judgment erroneously shows that Labrada pleaded "guilty" to the offense. The record supports the State's contention.

An appellate court has the authority to modify an incorrect judgment to make the record speak the truth when it has the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd) (en banc). We conclude the trial court's final judgment should be modified as follows:

–20–

"Plea to Offense: GUILTY" is modified to read "Plea to Offense: NOT GUILTY."

The State's cross point is decided in its favor.

## VI. CONCLUSION

The evidence was sufficient. Also, the trial court did not err when it excluded evidence Labrada sought to admit, and even if the there was jury-charge error, Labrada did not suffer egregious harm. And the trial judge erred when he signed a judgment with mistakes in it.

The trial court's judgment is affirmed as modified.

The trial court is directed to prepare a corrected judgment that reflects the modifications made in this Court's opinion and judgment in this case. *See Shumate v State*, 649 S.W.3d 240 (Tex. App.—Dallas 2021, no pet.).

/Emily Miskel/
EMILY MISKEL
JUSTICE

Do Not Publish
Tex. R. App. P. 47

210784F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

RUBEN LABRADA, Appellant

No. 05-21-00784-CR  V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1875816-V.
Opinion delivered by Justice Miskel.
Justices Molberg and Pedersen, III participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"Plea to Offense: GUILTY" is modified to read "Plea to Offense: NOT GUILTY."

As **REFORMED**, the judgment is **AFFIRMED**.

The trial court is **DIRECTED** to prepare a corrected judgment that reflects the modifications made in this Court's opinion and judgment in this case.

Judgment entered July 13, 2023